IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CONSOLIDATED EDISON COMPANY OF NEW YORK, INC. et al : : Plaintiffs : : V. : : SAMUEL BODMAN Secretary of Energy, United States et al : : Defendants : | Case Number 1:06CV01522RMC |

STATEMENT OF MATERIAL FACTS IN SUPPORT OF

PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Plaintiffs submit the following facts as those material to their accompanying Motion for Summary Judgment and Statement of Points and Authorities In Support. Plaintiffs assert that there is no genuine issue with respect to such facts:

1. By Order entered May 2004, this Court declared that "Plaintiffs (including the plaintiffs in the instant action) and other successful private-party claimants are entitled to a distribution of the entire 20% reserve described in the Modified Statement of Restitutionary Policy for Crude Oil Cases, 51 Fed. Reg. 27,899 (Aug. 4, 1986), insofar as practicable." Consolidated Edison Co. v. Abraham, ("Con Ed IV")  271 F. Supp. 2d 104, 112

1

(D.D.C. 2003) (emphasis supplied).

    2. By Federal Register Notice published January 13, 2006 at 71 Fed. Reg. 2195, (January 13 Notice") defendant in <u>Con Ed IV</u>, George B. Breznay, Director of the Office of Hearings and Appeals of the U.S. Department of Energy ("OHA" and "DOE") acting for OHA and for the other defendant in <u>Con Ed V</u>, the Secretary of Energy of the U.S., (hereinafter collectively "DOE") determined that the "available funds as of December 28, 2005" in the "20% reserve" which was the subject of this Court's Order in <u>Con Ed V</u> amounted to $284,126,991.33 (hereinafter, for convenience $284 million").

    3. In the same January 13 Notice, DOE declared that the "eligible claimants" entitled to recover the $284 million had 365,715,107,505 "gallons of eligible petroleum products" on the basis of which they were entitled to crude oil refunds.

    4. The methodology adopted by the January 13 Notice for calculating the refunds to which each eligible claimant would be entitled divides the funds deemed available for distribution by the number of gallons of qualified purchases by eligible claimants to calculate a "volumetric refund" and then , as to each claimant, multiplies the volumetric by the gallons of qualified purchases by each eligible claimant.

    4. Using such methodology, a volumetric refund per gallon of $.000769080 is calculated (rounding down to the ninth decimal as

per the methodology endorsed by DOE in the January 13 Notice.

5. In the January 13 Notice DOE announced that it would in fact use a "funds available" figure of $254,738,494.09 and a figure of 366,324,981,322 as "gallons of eligible petroleum products" in calculating the "volumetric refund", resulting in a volumetric refund of $.000695389 per gallon.

6. The reduction in the "funds available" figure and the increase in the "gallons of eligible petroleum products" in paragraph 5 reflected two adjustments, (i) withholding 10%, of the $284,126,991.33, i.e. $28,412,699.13, for possible payment to Philip P. Kalodner ("Kalodner") as a common fund fee of 10% of the available funds of $284 million in the event he were to be successful in litigation in which he was seeking such a fee (and in which, as of January 13, 2006 Kalodner had been awarded a fee by this Court, amounting to approximately 4% of the $284 million, an award subsequently reversed by the Court of Appeals for the District of Columbia Circuit), and (ii) withholding $975,798 and using a number of gallons of eligible products increased by 609,873,817 for possible payments to a claimant Mittal Steel USA ISG Inc. which had been denied refunds on purchases made at a steel plant at Weirton W. VA and was litigating that denial in the District Court.

7. Were the 10% withheld solely and exclusively for possible use to pay a fee awarded Kalodner not to have been withheld, the

distribution would have been of a "volumetric refund" of $.000772950 ($284,126,991.33 less $975,798 divided by 366,324.981,322 gallons), or an additional $.000077561 per gallon.

8. In the January 13 Notice, DOE undertook to provide to the eligible claimants the interest earned in the U.S. Treasury on the amount withheld for possible payment to Kalodner as a common fund fee, presumably to the extent to which such interest was not paid to Kalodner in connection with a common fund fee award to him.

9. In the January 13 Notice, DOE rejected the demand submitted by Kalodner on behalf of his clients that the 10% of the crude oil refunds due his clients which DOE had proposed be withheld from each of them in order to pay Kalodner a common fund fee not be withheld in distribution to those of his clients as to whom he had executed (and filed with DOE) a waiver of "the right to charge a common fund fee." A copy of the "Waiver" specifically identifying those claimants as to whom Kalodner was waiving any right to a common fund fee, as filed with DOE, was attached to the Complaint in this matter. As a basis for its rejection of the demand not to withhold the 10% from the Kalodner clients, DOE noted that this Court in awarding Kalodner a common fund fee had not exempted Kalodner's clients from the obligation to pay the approximate 4% common fund fee which this Court had

awarded Kalodner; that award has been reversed and vacated by the D.C. Circuit Court.

10. Subsequently to the January 13 Notice, and in accordance with its calculations, Kalodner's clients as to whom a waiver was executed by Kalodner have all received the $.000695389 calculated by DOE, reflecting the withholding of 10% of the funds calculated to be due for a possible common fund fee to Kalodner.

11. The only applications by Kalodner for a common fund fee which are now pending exempt from such claim all of the Kalodner clients as to whom he has executed and filed with DOE a waiver of any right to recover a common fund fee.

          Respectfully submitted,

          _____

          Philip P. Kalodner
          208 Righters Mill Rd.
          Gladwyne PA 19035
          DC Bar 973578
          610-649-8749

          Attorney for Plaintiffs
          And the Kalodner Client Group