IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

---

CONSOLIDATED EDISON COMPANY OF :
NEW YORK, INC. et al :
                              :
     Plaintiffs :
                              :   Case Number 1:06CV01522RMC
        V. :
                              :
SAMUEL BODMAN :
Secretary of Energy, United :
States et al :
                              :
     Defendants :

---

PLAINTIFFS' STATEMENT OF POINTS AND AUTHORITIES IM SUPPORT OF

PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

INTRODUCTION AND SUMMARY OF ARGUMENT

Plaintiffs, Consolidated Edison Co. et al, on their own behalf and on behalf of all crude oil refund claimants represented by Philip P. Kalodner ("Kalodner") with whom Kalodner has fee agreements and as to whom Kalodner has waived any claim for a common fund fee to be paid from refunds distributed or to be distributed by the U.S. Department of Energy ("Kalodner Client Group") has moved for an Order directing the defendants, officials of the U.S. Department of Energy ("DOE") to distribute forthwith to the plaintiffs and the members of the Kalodner Client Group the 10% withheld from them for possible payment of a common fund fee to Kalodner, an amount of $.000077561 per

1

qualified gallon, together with the interest earned thereon in the U.S. Treasury from and after December 28, 2005 and until the date of distribution.

Philip P. Kalodner ("Kalodner") is seeking in litigation a common fund fee of 10% of the crude oil refunds being disbursed by the U.S. Department of Energy ("DOE") to each of some 31,000 claimants.

However, Kalodner has waived the right to any common fund fee to be recovered from the plaintiffs herein and all crude oil refund claimants represented by him with whom he has fee agreements and as to whom he has waived any claim for a common fund fee ("Kalodner Client Group"). Such waiver has been filed with the DOE, and acknowledged by it.

In order to have available the 10% sought by Kalodner as a common fund fee, and solely for that purpose, Defendants, the Secretary of Energy of the United States and the Director of the Office of Hearings and Appeals of the Department of Energy (cumulatively,"DOE") have withheld such 10% from distributions which they are making to some 31,000 claimants, and which they have already made to more than 29,700 claimants, including the plaintiffs and the other members of the Kalodner Client Group.

In light of the Waiver of a common fund fee by Kalodner as to the plaintiffs and the other members of the Kalodner Client Group, DOE has a duty to distribute to plaintiffs and the other

2

members of the Kalodner Client Group the 10% withheld from the distributions which have been made to them, i.e. $.000077561 per qualified gallon of purchases.

Such a duty arises from this Court's declaration in its decision in <u>Consolidated Edison Co. v. Abraham</u> ("<u>Con Ed IV</u>"), 271 F. Supp. 2d 104, 112 (D.C.D. 2003) that "Plaintiffs (including the plaintiffs in the instant action) and other successful private-party claimants are entitled to a distribution of the <u>entire 20% reserve</u> (of crude oil refunds) described in the Modified Statement of Restitutionary Policy for Crude Oil Cases, 51 Fed. Reg. 27,899 (Aug. 4, 1986), <u>insofar as practicable</u>." (Emphasis supplied).

It is a duty which has been acknowledged by the federal defendants in documents filed with this Court and in a series of Federal Register notices, culminating in a Notice published January 13, 2006 ("January 13 Notice"), 71 Fed. Reg. 2195. By virtue of such acknowledgments, DOE has effectively promised to distribute the withheld 10% if not required to be used for a common fund fee, as it is not in the case of the plaintiffs and the Kalodner Client Group.

Accordingly, DOE has a duty, enforceable by mandamus, to disburse forthwith to the plaintiffs and the members of the Kalodner Client Group the 10% withheld from distribution to them, i.e. $.000077561 per gallon, together with the interest earned

3

thereon subsequent to December 28, 2005.

<u>STATEMENT OF THE CASE</u>

The Complaint was brought by eight of Kalodner's clients in DOE's crude oil refund proceedings on their own behalf and on behalf of all other Kalodner clients in the proceedings as to whom Kalodner had executed and delivered to DOE a waiver of any right to a common fund fee (cumulatively the "Kalodner Client Group").

In lieu of an application for certification of the Kalodner Client Group as a class, the parties and Kalodner on behalf of the non-party members of the Kalodner Client Group stipulated that a determination as to the eight plaintiffs would also apply to and bind the non-party members of the Kalodner Client Group.

The Complaint seeks a writ of mandamus directing DOE to distribute to the plaintiffs and the other members of the Kalodner Client Group the 10% of available crude oil refunds withheld for possible use for a common fund fee to be paid Kalodner.

STATEMENT OF FACTS

By Order entered May 2003, this Court declared that "Plaintiffs (including the plaintiffs in the instant action) and other successful private-party claimants are entitled to a distribution of the <u>entire 20% reserve</u> (of crude oil refunds) described in the Modified Statement of Restitutionary Policy for Crude Oil Cases, 51 Fed. Reg. 27,899 (Aug. 4, 1986), <u>insofar as practicable</u>." <u>Consolidated Edison Co. v. Abraham</u>, ("<u>Con Ed IV</u>") 271 F. Supp. 2d 104, 112 (D.D.C. 2003) (emphasis supplied).

By Federal Register Notice published January 13, 2006 at 71 Fed. Reg. 2195, ("January 13 Notice") defendant in <u>Con Ed IV</u>, George B. Breznay, Director of the Office of Hearings and Appeals of the U.S. Department of Energy ("OHA" and "DOE") acting for OHA and for the other defendant in <u>Con Ed IV</u>, the Secretary of Energy of the U.S., (hereinafter collectively "DOE") determined that the "available funds as of December 28, 2005" in the "20% reserve" which was the subject of this Court's Order in <u>Con Ed V</u> amounted to $284,126,991.33 (hereinafter, for convenience $284 million").

In the same January 13 Notice, DOE declared that the "eligible claimants" entitled to recover the $284 million had 365,715,107,505 "gallons of eligible petroleum products" on the basis of which they were entitled to crude oil refunds.

The methodology adopted by the January 13 Notice for

calculating the refunds to which each eligible claimant would be entitled divides the funds deemed available for distribution by the number of gallons of qualified purchases by eligible claimants to calculate a "volumetric refund", and then, as to each claimant, multiplies the volumetric refund by the gallons of qualified purchases made by each eligible claimant.

Using such methodology, a volumetric refund per gallon of $.000769080 is calculated (rounding down to the ninth decimal as per the methodology endorsed by DOE in the January 13 Notice).

In the January 13 Notice DOE announced that it would in fact use a "funds available" figure of $254,738,494.09 and a figure of 366,324,981,322 as "gallons of eligible petroleum products" in calculating the "volumetric refund", resulting in a volumetric refund of $.000695389 per gallon.

The reduction in the "funds available" figure and the increase in the "gallons of eligible petroleum products" in the preceding paragraph reflected two adjustments, (I) withholding 10%, of the $284,126,991.33, i.e. $28,412,699.13, for possible payment to Philip P. Kalodner ("Kalodner") as a common fund fee of 10% of the available funds of $284 million in the event he were to be successful in litigation in which he was seeking such a fee (and in which, as of January 13, 2006 Kalodner had been awarded a fee by this Court, amounting to approximately 4%, an award subsequently reversed by the Court of Appeals for the

District of Columbia Circuit), and (ii) withholding $975,798 and using a number of gallons of eligible products increased by 609,873,817 for possible payments to a claimant Mittal Steel USA ISG Inc. which had been denied refunds on purchases made at a steel plant at Weirton W. VA and was litigating that denial in the District Court.

Were the 10% withheld solely and exclusively for possible use to pay a fee awarded Kalodner not to have been withheld, the distribution would have been of a "volumetric refund" of $.000772950 ($284,126,991.33 less $975,798 divided by 366,324.981,322 gallons), or an additional $.000077561 per gallon.

In the January 13 Notice, DOE undertook to provide to the eligible claimants the interest earned in the U.S. Treasury on the amount withheld for possible payment to Kalodner as a common fund fee, presumably to the extent to which such interest was not paid to Kalodner in connection with a common fund fee award to him.

In the January 13 Notice, DOE rejected the demand submitted by Kalodner on behalf of his clients that the 10% of the crude oil refunds due his clients which DOE had proposed be withheld from each of them in order to pay Kalodner a common fund fee not be withheld in distribution to those of his clients as to whom he had executed (and filed with DOE) a waiver of "the right to

charge a common fund fee." A copy of the "Waiver" specifically identifying those claimants as to whom Kalodner was waiving any right to a common fund fee, as filed with DOE, was attached to the Complaint in this matter. As a basis for its rejection of the demand not to withhold the 10% from the Kalodner clients, DOE noted that this Court in awarding Kalodner a common fund fee had not exempted Kalodner's clients from the obligation to pay the approximate 4% common fund fee which this Court had awarded Kalodner; that award has been reversed and vacated by the D.C. Circuit Court.

Subsequently to the January 13 Notice, and in accordance with its calculations, Kalodner's clients as to whom a waiver was executed by Kalodner have all received the $.000695389 calculated by DOE, reflecting the withholding of 10% of the funds calculated to be due for a possible common fund fee to Kalodner and the adjustments in connection with the Mittal claim..

The only applications by Kalodner for a common fund fee which are now pending exempt from such claim all of the Kalodner clients as to whom he has executed and filed with DOE a waiver of any right to recover a common fund fee.

8

ARGUMENT

I    IN VIEW OF KALODNER'S WAIVER OF ANY CLAIM FOR A COMMON FUND
FEE FROM THE PLAINTIFFS AND THE OTHER KALODNER CLIENT GROUP
CLAIMANTS, THE 10% WITHHELD FROM THE DISTRIBUTION TO EACH OF THEM
FOR A POSSIBLE COMMON FUND FEE TO KALODNER SHOULD BE DISTRIBUTED
TO THEM

Kalodner has waived the right to any common fund fee from the plaintiffs and from the other claimants in the Kalodner Client Group. The Waiver was an attachment to Comments filed with OHA and dated October 25, 2005. A copy of the Waiver is Exhibit A to the Complaint in the instant matter.

DOE acknowledged receipt of the Waiver and of the corresponding request that the 10% which DOE had proposed to withhold from all claimants for possible use to pay a common fund fee to Kalodner not be withheld from the Kalodner Client Group when it rejected such request in its January 13 Notice announcing the distribution to claimants with 10% withheld for possible use to pay Kalodner.

Kalodner has waived a common fund from the Kalodner Client Group because the benefits provided them for which he claims a common fund fee from the other claimants, including, but not limited to, the obtaining of a declaratory judgment in Con Ed IV and its implementation by virtue of Con Ed V and Con Ed VI, were

provided pursuant to fee agreements which specified the
compensation he was to receive.

Moreover, in none of the now pending litigation in which
Kalodner seeks such a common fund fee does he seek such from the
plaintiffs or the other members of the Kalodner Client Group.

The sole basis given by DOE in the January 13 Notice for
withholding 10% of the funds due the plaintiffs and the Kalodner
Client Group on the basis of the Kalodner claim for a common fund
fee was that this Court's Order awarding Kalodner a common fund
fee of approximately 4% of the funds to be distributed did not
exclude the members of the Kalodner Client Group, and presumably
if Kalodner was successful on appeal and subsequent remand in
obtaining the full 10% he sought, this Court would possibly order
the payment of such 10% from the funds due all claimants,
including the Kalodner Client Group.

But whatever may have been the merit of that basis for
refusing to honor the waiver executed by Kalodner (waiving a
common fund fee as to all members of the Kalodner Client Group)
while this Court's award remained outstanding, as it did as of
the January 13 Notice, it has no merit now that this Court's
award has been reversed.

10

II    <u>DOE HAS A DUTY, ENFORCEABLE BY MANDAMUS, TO DISTRIBUTE THE</u>
<u>10% WITHHELD FOR A POSSIBLE COMMON FUND FEE TO KALODNER TO THE</u>
<u>PLAINTIFFS AND THE KALODNER CLIENT GROUP; SUCH DUTY EXISTS</u>
<u>PURSUANT TO THIS COURT'S DECLARATORY ORDER AND HAS BEEN</u>
<u>ACKNOWLEDGED BY DOE</u>

By Order entered May 2003, this Court declared that
distribution of the remaining available reserve in the escrow
accounts maintained for claimants in the U.S. Treasury is the
duty of the DOE: "Plaintiffs (including the plaintiffs in the
instant action) and other successful private-party claimants are
entitled to a distribution of the <u>entire 20% reserve</u> (of crude
oil refunds) described in the Modified Statement of
Restitutionary Policy for Crude Oil Cases, 51 Fed. Reg. 27,899
(Aug. 4, 1986), <u>insofar as practicable</u>." <u>Consolidated Edison Co.</u>
<u>v. Abraham</u>, ("<u>Con Ed IV</u>")  271 F. Supp. 2d104, 112 (D.D.C. 2004)
(emphasis supplied).

In response to this Court's declaratory judgment in <u>Con Ed</u>
<u>IV</u>, DOE has acknowledged that such distribution of the entire
available reserve is its duty, inter alia:

1. In a Declaration dated February 9, 2005, filed with this
Court in <u>Consolidated Edison Co. v. Bodman</u> ("<u>Con Ed V</u>"), Civ. 03-
1991RMC, George B. Breznay, Director of OHA and a defendant in
this action characterized this Court's declaratory judgment in
<u>Con Ed IV</u> as one which "articulated DOE's <u>obligation</u> under

existing departmental decisions to pay out refunds from the remaining crude oil refunds collected by the DOE to individual refund claimants."  (Emphasis supplied)

2. Earlier, in a Federal Register Notice published May 21, 2004 at 69 Fed. Reg. 20,300, in adopting a methodology for calculating the amount of the distribution which would be made to claimants pursuant to the declaratory judgment and announcing a plan for claimants to submit required verifications, Breznay, for OHA, explained that "the goal of this proceeding is to <u>distribute the entire amount </u>of crude oil overcharge funds held by the DOE to end user claimants." 69 Fed. Reg. at 29,302 (Emphasis supplied).

3. In a Declaration dated August 8, 2005 and filed in this Court in <u>Consolidated Edison Co. V. Bodman</u> ("<u>Con Ed VI</u>"), Richard Tedrow, Deputy Director of OHA,  explained that pending litigation would permit initial distribution of only some 90% of the available funds pending conclusion of such litigation, making it impossible for DOE to "make one single distribution of the crude oil funds to eligible claimants that would <u>exhaust the crude oil funds </u>and end the Department's role in supervising these funds," thereby affirming its recognition of a duty to distribute all of the available funds, i.e. to "exhaust" them (Emphasis supplied).

4. In a Federal Register Notice published January 13, 2006

12

("January 13 Notice"), 71 Fed. Register 2195, in explaining that
DOE was withholding from each claimant (I) 10% of each claimant's
share of the refunds including interest available as of December
28, 2005 in the event such 10% was required for a common fund fee
to be paid to Kalodner, and (ii) an additional approximate .5%
was being withheld in order to pay a claim by Mittal Steel USA
ISG as to which its denial was on appeal, if required.

Breznay, although in the Notice specifically denying a
requested commitment by the Kalodner Client Group to make a
distribution of the funds remaining because of "uncertainties
posed by the outstanding litigation," explained that "if the DOE
prevails in all of the pending litigation, there would likely be
sufficient remaining funds to warrant a final distribution."

Moreover, Breznay actually recognized in the same January 13
Notice DOE's obligation to distribute the withheld 10.5% to the
extent not required in connection with the Kalodner and Mittal
Steel litigation by explaining that the withheld funds "are being
held in an interest-bearing account, the effect of which will be
to compensate claimants for the delay in disbursement." 71 Fed.
Reg. at 296 (Emphasis supplied); such a commitment to pay
interest to the claimants necessarily includes a commitment to
pay them the principal on which the interest is being earned.

Thus, there are two independent bases here for the issuance
of a writ of mandamus compelling distribution of the 10% withheld

13

to those claimants as to whom Kalodner has waived any claim to a common fund fee, i.e. the plaintiffs and the Kalodner Client Group.

1. <u>This Court Has Declared The Distribution To Be The Duty of the DOE "Insofar As Practicable" and DOE Has Acknowledged That It Is "Practicable" To Distribute the Withheld 10% If Not Needed For a Fee to Kalodner</u>

Mandamus is an appropriate remedy where it is necessary to compel an executive officer of the United States to perform a statutory duty, even where the statute "requires to some degree a construction of the (statutory) language by the officer" <u>Wilbur v. United States</u>, 280 U.S. 306, 318-319 (1929) quoting from prior decisions; in <u>Wilbur</u>, the Supreme Court held that the U.S. Secretary of Interior had incorrectly failed to recognize a statutory provision which grand-fathered the rights of a claimant to a mine, and the Court directed that a writ of mandamus be issued requiring the Secretary of Interior to interpret the prior statute as unaffected by a subsequent statute and to honor the mining claim.

Here, as this Court found in <u>Con Ed IV</u>, the DOE itself had interpreted the statutes as requiring distribution to individual claimants of the entire amount of funds reserved for such distribution, and accordingly, the DOE had no possible discretion to ignore the duty to distribute the available funds to claimants

14

"insofar as practicable."

See also <u>National Treasury Employees Union v. Nixon</u>, 492 F. 2d 587, 602 (D.C. Cir. 1974) in which the Court found that a writ of mandamus could properly be issued to compel the President to grant pay adjustments mandated by federal statute even where "the President was required to interpret... (two statutes)," the D.C. Circuit explaining that such necessity of interpretation "did not render the duty to effect an October, 1972 pay adjustment other than ministerial."

The conditions which led this Court to decline to issue a writ of mandamus when it determined in <u>Con Ed IV</u> that the "Plaintiffs possess a <u>right to the distribution</u> of the remaining funds in the 205 reserve" (271 F. Supp. 2d at 111, Emphasis supplied) no longer exist. Not only are there no more remaining claims which could affect the number of claimant gallons and therefore could affect the amount per gallon to be due each claimant, as there were when this Court declined to issue a writ of mandamus in <u>Con Ed IV</u>, but the DOE has identified specifically the amount withheld for a possible Kalodner fee as of December 28, 2005 ($28,412,709.13 )and the gallon volume of claims from which such amount was withheld, 366,324,981,322 (January 13 Notice, 71 Fed. Reg. at 2197); accordingly the amount per gallon withheld from the plaintiffs and each other approved claimant for a possible fee to Kalodner can be precisely calculated (to the

nine decimal places adopted as the methodology to be used in the January 13 Notice), i.e. $.000077561 per gallon. And the DOE has identified the interest which would be appropriately paid on such withheld amount "to compensate the claimants for the delay in disbursement" as that earned on such amount from and after December 28, 2005 to the date of distribution (January 13 Notice, 71 Fed. Reg. at 2196).

Moreover, DOE has effectively acknowledged that at least where, as is the case here, the entire 10% withheld is available for distribution, it is indeed "practicable" to make such a distribution: "If the DOE prevails in all of the pending litigation at issue, there would likely be sufficient funds to warrant a final distribution." (January 13 Notice, 71 Fed. Reg. At 2196).

DOE could hardly maintain otherwise. It has distributed the 89.5% not withheld to more than 29,700 claimants, more than 96% of all eligible claimants, in less than 100 individual orders; indeed distribution of the 89.5% to more than 13,000 of the 31,000 claimants was accomplished with checks or wire transfers to less than 25 representatives of the 13,000.

Indeed here, in accordance with DOE's policy and practice of distributing funds due claimants to their duly authorized attorney, only one DOE check or wire transfer will be necessary to distribute the withheld 10% to all of the members of the

16

Kalodner Client Group.

2. The DOE Has Recognized its "Obligation" To Distribute to The Approved Claimants the "Entire Amount" of the Funds Available for Such Distribution In a Manner Which Would "Exhaust the Funds", Thereby Making a "Promise" Which Is Enforceable By Mandamus

As recounted above, in two declarations filed with this Court and in two Federal Register Notices, DOE has effectively promised not only to comply with this Court's Con Ed IV declaratory order, but in doing so to distribute to claimants the "entire amount" of available funds, i.e. to "exhaust" the funds in such distribution.

Even in the absence of this Court's declaration that DOE has a duty or obligation to distribute the available funds to the extent practicable, DOE's undertaking or promise to do so would be the basis for the issuance of a writ of mandamus requiring distribution of the withheld 10% if not required for the purpose for which it was withheld.

The courts have regularly recognized the appropriateness of the use of mandamus to enforce a promise made by an official of the United States: See, e.g. Vishnevsky v. United states, 581 F. 2d 1249, 1253 (7th Cir. 1978) (mandamus held appropriate to enforce the promise of the District Director of Internal Revenue that he would apply an overpayment in one year to tax liabilities

for other years); <u>Estate of Michael ex rel. Michael v. Lullo</u>, 173
F. 3d 503, 513 (4th Cir. 1999) (another action against a District
Director of the Internal Revenue Service, the Court holding that
mandamus was appropriate to require "government officials and
government agencies... to comply with their representations to
citizens, such as the representation made the Estate by the IRS
in the Closing letter.")

<u>CONCLUSION</u>

In light of the Waiver by Philip P. Kalodner of any claim
for a common fund fee from funds due the plaintiff and the
similarly situated members of the Kalodner Client Group, this
Court should enter an Order directing the defendants, officials
of the U.S. Department of Energy  to distribute forthwith to the
plaintiffs and the members of the Kalodner Client Group the 10%
withheld from them for possible payment of a common fund fee to
Kalodner, an amount of $.000077561 per qualified gallon, together
with the interest earned thereon in the U.S. Treasury from and
after December 28, 2005 and until the date of distribution of
such $.000077561 per gallon.

Plaintiffs respectfully request the opportunity to offer
oral argument in support of their Motion for Summary Judgment.

Respectfully submitted,

_____

Philip P. Kalodner
208 Righters Mill Rd.
Gladwyne PA 19035
DC Bar 973578
610-649-8749

Attorney for Plaintiffs
And the Kalodner Client Group