UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **CONSOLIDATED EDISON CO., et. al.** | ) |
| | ) |
| **Plaintiffs,** | ) |
| | ) Case no. 1:06-cv-01522-RMC |
| v. | ) |
| | ) |
| | ) |
| **SAMUEL BODMAN, et. al.** | ) |
| | ) |
| **Defendants.** | ) |

**MEMORANDUM
IN OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT
AND IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

The Plaintiffs filed a Motion for Summary Judgment requesting an order directing the Defendants to pay to the Plaintiffs their portion of the 10% reserve of crude oil refunds set aside for possible payment of attorney fees to the Plaintiffs' attorney, Philip Kalodner. The Defendants oppose the grant of a summary judgment to the Plaintiffs and respectfully ask the Court to issue summary judgment in their favor and to dismiss the lawsuit.

The Plaintiffs' cause of action is one for mandamus. By their Motion, the Plaintiffs appear to argue that as a matter of law they are entitled to the extraordinary remedy of mandamus placing them ahead of all other claimants for final distribution of the 10% reserve from the fund created under the Emergency Petroleum Allocation Act (EPAA) of 1973.

The Defendants' position is that the Plaintiffs, as well as all the rest of the approved claimants, would have received their portion of the 10% reserve set aside for payment to the Plaintiffs' attorney had it not been for the lawsuits filed by the Plaintiffs and their attorney seeking attorney fees. The uncertainty which has resulted from such lawsuits, rulings, and appeals justify the decision by the agency to await a final resolution of the litigation before making a final distribution to all approved claimants. The Plaintiffs have not met their burden of showing that the extraordinary

1

remedy of mandamus is appropriate for a court to compel agency action. Rather, the delay in payment to all claimants, including the Plaintiffs, is the result of careful consideration by the agency of all aspects of the refund process, as well as the Court's prior order to make distributions "insofar as practicable."

Further, the law requires the courts to recognize the agency's expertise and accord the agency's determination great deference. If there is a rational basis for the agency's action and the agency had not exceeded its authority, judicial approval is necessary.

Additionally, the Defendants will show that the delay in payment is due solely to Plaintiffs' and their attorney's own actions and that the Plaintiffs are not harmed by the delay, where the 10% reserve is in an interest-bearing account.

## I. STATEMENT OF FACTS

This Court, having presided over numerous cases filed by the Plaintiffs and their attorney, is more than familiar with the background of this litigation. The Plaintiffs' motion is supported by facts laid out in the "Statement of Facts." Among those are references to the January 13 Notice (71 FR 2195) and the May 9, 2003 Order in *ConEd IV* ( *Consolidated Edison v. Abraham*, 271 F.Supp. 2d 104, D.D.C. 2003). The Defendants admit that those two documents were issued as claimed and further state that the documents speak for themselves. The Plaintiffs appear to rely on facts and materials stated in other portions of their Memorandum. Insofar as the referenced materials are part of the court filings on record in cases *ConEd IV* (case no. 01-548) *ConEd V* (case no. 03-1991), and in *ConEd VI* (case no. 05-816), they speak for themselves.

Defendants rely on the following undisputed facts: Paragraphs 1-21 in the Declaration of Fred Brown, OHA's Acting Director.[1] (Ex. 1 hereto)

---

[1] George Breznay, who is one of the named Defendants, retired in January 2007. Fred Brown is currently Acting Director of the Office of Hearing and Appeals at the Department of Energy.

## II.  LEGAL STANDARD

<u>Summary Judgment</u>.  A motion under Rule 56 should be granted if "there is no genuine issue as to any material fact and … the moving party is entitled to a judgment as a matter of law.  F.R. Civ. P. 56(c).

<u>Mandamus</u>.  The remedy of mandamus is a "drastic one, to be invoked only in extraordinary circumstances."  *Northern States Power Co. v. DOE*, 128 F.3d 754, 758 (D.C. Cir. 1997).  It is proper only if "(1) the plaintiff has a clear right to relief; (2) the defendant has a clear duty to act; and (3) there is no other adequate remedy available to the plaintiff."  *Id.*  Only "exceptional circumstances amounting to a judicial usurpation of power" will justify issuance of the writ.  *Will v. United States*, 390 U. S. 90, 95 (1967). The party seeking mandamus has the burden of showing that its right to issuance is clear and indisputable."  128 F.3d at 758

<u>APA, section 701(1)</u>.  Where an agency is seen as delaying an action (as opposed to denying a duty to act at any point in time), and action for mandamus has been compared to an action under the Administrative Procedure Act (APA), 5 U.S.C. § 701(1), to compel "unlawfully or unreasonably delayed" agency action.  *In re Am. Rivers & Idaho Rivers United*, 372 F.3d 413 (D.C. Cir. 2004); *TRAC v. FCC*, 750 F.2d 70 (D.C. Cir. 1984).  In such cases, the courts consider certain factors set out in *TRAC*: 1) the "rule of reason" time for an agency to make a decision; 2) any statutory timetable, (3) human health and welfare at stake, (4) effect of expedited action on higher or competing priority for the agency, (5) interest prejudiced by the delay, and (6) a finding of no impropriety behind the delay.  *TRAC* at 80. When examining the "unreasonableness" of the delay, the court should "consider whether the agency's delay is so egregious as to warrant mandamus."  *Id.* at 79.  Courts should interfere with the normal progression of agency proceedings only to correct "transparent violations of a clear duty to act."  *In re Bluewater Network*, 234 F.3d 1305, 1315 (D.C. Cir. 2000).

Role of the courts in review of OHA decisions. In proceedings under the EPAA, the standard of judicial review for OHA decisions is set forth in *Phoenix Petroleum Co. v. FERC*, 56 F.3d 1555, 1567 (Fed. Cir. 1995):

> [T]his court will set aside an EPAA/ESA agency action only if it is in excess of the agency's authority, or is based upon findings which are not supported by substantial evidence. We recognize DOE's administrative expertise, accord the agency's determination great deference, and must approve the DOE decision if there is a rational basis for it.

*Id.* at 1567. Thus, "the judicial role requires approval if there is a rational basis for it." *Id.* OHA is accorded great deference in administering its own regulations and procedure. *Sinclair Oil Corp. v. Abraham*, 291 F.3d 822, 826-27 (Fed. Cir. 2002).

### III. ARGUMENT

**1.    The Plaintiffs have not met their burden of showing that mandamus should issue.**

The facts are not in dispute. When the *Northern States Power* three-prong test for the issuance of mandamus is applied, it becomes clear that the Plaintiffs have not met their burden to show that mandamus should issue. The agency is under no clear duty to make a distribution to the Plaintiffs at a time chosen by the Plaintiffs and ahead of all other claimants. OHA is postponing payment to the Plaintiffs *and to all other claimants* in order to have sufficient funds to pay the Plaintiffs' attorney in the event a court is to award attorney fees. This Court, in its May 9, 2003 order in *ConEd IV* (case no. 01-548), refused to set a timetable for final distribution and did not use absolute terms but rather stated that such should be done "insofar as practicable." In *ConEd V* this Court again refused to issue a mandamus, dismissing a lawsuit designed to put the court in a position to micromanage the distribution of refunds. *See* June 30, 2004 Order in case no. 03-1991. The Court found that the agency was proceeding with its planned distribution, which at that time was to distribute all refunds to all claimants. *See* June 30, 2004 Order and Ex. 1, par. 11. But instead of

allowing the agency to perform as Plaintiffs themselves had been advocating, plaintiffs' appearing counsel Kalodner filed a motion for attorney fees, which eventually resulted in the need to set aside the 10% reserve.

The Plaintiffs and their attorney have themselves contributed to the uncertainty of who is seeking a fee and who should be assessed such fee. In an application for attorney fees filed on July 12, 2004 in *ConEd V*, there is no mention anywhere that Kalodner has waived a claim for a common fund fee as against his own clients. When the Court granted in part the application and awarded a common fund fee in its January 26, 2005 Order, it did not distinguish between Kalodner's clients and other claimants. Kalodner chose to waive a claim for a common fund fee against his clients when he filed a comment after the agency proposed to reserve 10% for attorney fees in its September 30, 2005 notice. (Ex. 1, par. 17.) But even after that, in the January 31, 2006 motion for fees filed in *ConEd VI* (*Consolidated Edison, v. Bodman*, case no. 05-816), the claim for fees was made against the fund as a whole, which includes the portion due to Kalodner's clients. In the appeal of *ConEd V*, the Plaintiffs, Kalodner, and the D.C. Circuit Court did not make any distinction between Kalodner's clients and all other claimants where a percentage was sought as common fund fees. *See Consolidated Edison v. Bodman*, 445 F.3d 438 (D.C. Cir. 2006).

The Plaintiffs, until now, did not advise the courts that any award of attorney fees made either to them directly or to their attorney should not come out of their portion of refunds due and the courts have so understood them. In effect, the Plaintiffs are precluded from taking the position that they have now adopted in this lawsuit. In that respect, it cannot be said that the Plaintiffs have a clear right to immediate distribution or that the Defendants have the clear duty to act now instead of after all lawsuits concerning attorney fees have been resolved one way or another. In addition, Plaintiffs are in the best position to approach their attorney with a request that he cease his quest for

5

attorney fees against DOE, and allow DOE to make final distribution to all claimants using the same formula for each one of them.

> 2. **The delay in payment is a reasonable agency decision applied to all claimants equally and is not harmful to the Plaintiffs.**

When the claim is examined as one for delayed agency action and the *TRAC* case factors are applied, it also becomes clear that mandamus is not appropriate remedy: (1) The agency decision to make any future final distributions to all claimants at the same time and not to treat one group preferentially over another is a reasonable one and was taken after considering comments by the claimants (Ex. 1, par. 16-21); (2) there is no statutory or court imposed timetable to make final distribution (see May 9, 2003 Order in *ConEd IV*, declaring that "the Court is unable to order the DOE to distribute those monies at this time" and that distribution should be made "insofar as practicable." 271 F. Supp. 2d 104, 112 (D.D.C. 2003); (3) no human health and welfare are at stake; (4) expediting the payment to Plaintiffs ahead of everyone else may result in unequal treatment of claimants in the event that final distribution of a sufficiently small resulting amount is "impracticable" (Ex. 1, par. 21); (5) the Plaintiffs are no more prejudiced than any other claimant from the delay and the money is in an interest-bearing account (Ex. 1, par. 18); and (6) there is no impropriety behind the decision to delay final distribution and none is alleged.

As seen in the decisions in *Phoenix Petroleum* and *Sinclair Oil* (*supra*, pg. 4), if OHA has a rational basis for its decision in administering the refund process, the Court should recognize its expertise and approve OHA's decision to distribute refunds to all claimants at the same time and at the same rate. As evidenced by the Declaration of OHA's Acting Director, Fred Brown, attached hereto, OHA employed the proper administrative process and took into consideration the comments by claimants. (Ex. 1, par. 16-18.) Its decision to make a 90% distribution and reserve 10% from refunds due to all claimants is a rational decision, and an equitable one, too. OHA's decision to

reject Kalodner's request to pay his clients in advance of final distribution takes into account various scenarios under which such payment may result in the Plaintiffs receiving proportionately larger payments than other claimants. (Ex. 1, par. 20-21.) OHA did not exceed its authority and its rational decision should be given great deference.

The Plaintiffs are taking the position that because the award of fees in *ConEd V* was reversed by the D.C. Circuit, the agency should now change its decision to treat all claimants equally and instead pay Plaintiffs ahead of all others. However, it would be imprudent for the agency to make important decisions based on the inconsistent litigation positions that Plaintiffs and their attorney take in the many lawsuits that they file. While the award of fees in *ConEd V* was reversed, the case was remanded for further determination with respect to the claim for fees made as a result of *ConEd IV*.

3. **The Plaintiffs are in the same position as all other claimants and no preferential treatment is warranted**

Interestingly, Kalodner has expressed in various court filings the position that although his clients were the named Plaintiffs in *ConEd V*, it was not they but he who sought attorney fees. He confirmed this position in his November 14, 2006 Memorandum in Opposition of Federal Defendants to Plaintiff's Motion to Consolidate, pg. 2, in *Kalodner IV* (case no. 06-818), stating that in the 03-1991 case "the application is by Kalodner for a fee to be awarded to him, not his clients" and that any belief that Kalodner's clients are seeking a fee is a "misunderstanding." The Court dismissed *Kalodner IV* based on the finding that the issue of whether on not Kalodner can obtain a money judgment has been previously litigated and decided against him. The D.C. Circuit was unequivocal that Kalodner cannot maintain a claim for fees. *Consolidated Edison v. Bodman*, 445 F.3d 438, 448 (D.C. Cir. 2006). The logical conclusion is that neither Kalodner nor his clients should have a reasonable expectation for an award of attorney fees – the former one because the law

says so, and the latter ones because their attorney says so. Thus, the Plaintiffs are in no different position than any other claimant, and distribution of the refunds to them prior to final distribution to all claimants is clearly inequitable and uncalled for.

## IV.  CONCLUSION

Having created the reason for the delay in the final distribution, the Plaintiffs are not entitled to a court order mandating that the agency pay them ahead of everyone else. The Defendants have established that they are under no duty to differentiate between claimants and to treat them unequally. The agency's decision to postpone final distribution until the issue of attorney fee is judicially resolved is a reasonable and a responsible decision, which does not call for an extraordinary writ of mandamus.

For the forgoing reasons, the Defendants pray that summary judgment is entered in their favor and against the Plaintiffs' claim for mandamus and that the Plaintiffs' case be dismissed with prejudice.

Respectfully submitted:

_____/s/_____
Ada L. Mitrani, D.C. Bar # 498560
Stephen C. Skubel, D.C. Bar # 256461
U.S. DEPARTMENT OF ENERGY
GC-31 FORS
1000 Independence Ave. SW
Washington D.C. 20585
Tel. 202-586-5550
Fax 202-586-3437