# UNITED STATES DISTRICT COURT FOR
# THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| Consolidated Edison Co. of New York, et al. )<br>)<br>Plaintiffs. )<br>)<br>v. )<br>)<br>Samuel W. Bodman, Secretary of Energy and )<br>George B. Breznay, Director of the Office of )<br>Hearings and Appeals, United States )<br>Department of Energy )<br>)<br>Defendants. ) | Civil Action No. 1:06-CV-01522-RMC |

### Declaration of Fred L. Brown

1.  I am Fred L. Brown, Acting Director, Office of Hearings and Appeals (OHA), Department of Energy. I have served in this position since January 3, 2007. Previously, I was Associate Director of OHA from October 2006 to December 2006, and an Assistant Director from July 2002 to October 2006. Overall, I have served within OHA for more than 28 years. In those capacities my official duties include supervising case analysis and adjudicating a variety of administrative cases that arise under DOE regulations. In accordance with those duties I am familiar with the operations of the Office of Hearings and Appeals and in particular the operation of the so-called "Subpart V" crude oil overcharge refund proceeding. *See* 10 C.F.R. Part 205, Subpart V (Subpart V).

2. The Subpart V crude oil overcharge refund proceeding being conducted by the Office of Hearings and Appeals (OHA) of the U.S. Department of Energy (Department) arises from the enforcement of regulations promulgated under the Emergency Petroleum Allocation Act of 1973, and pursuant to the "Stripper Well Settlement Agreement" approved by the U.S. District Court for the District of Kansas, *In re Department of Energy Stripper Well Exemption Litigation*, 653 F. Supp. 108 (D. Kan. 1986).

3. The *Stripper Well* Settlement Agreement calls for monetary refunds from crude oil overcharges to be paid to purchasers of refined petroleum products during the period April 1973 through January 1981 that were injured by regulatory overcharges in those purchases. DOE agreed to issue a Modified Statement of Restitutionary Policy to provide an opportunity for victims of overcharges to submit a claim for refunds pursuant to the agency's Subpart V procedures. The Department announced its general plan to pay monetary refunds in a Federal Register Notice dated August 4, 1986. *See Statement of Modified Restitutionary Policy To Be Implemented In Crude Oil Cases*, 51 Fed. Reg. 27899 (August 4, 1986).

4. OHA subsequently outlined the general procedures it proposed to implement the Departmental policy to provide refunds to petroleum product purchasers in a Federal Register notice dated August 20, 1986. *See* 51 Fed. Reg. 29689 (August 20, 1986).

5. In OHA's planning for distribution of these funds, the office anticipated that there would be several rounds of refunds. *See* 52 Fed. Reg. 11737 (April 10, 1987). The April 1987 Federal

Register Notice stated: "It is clear that we are faced with a rolling process in which moneys will flow into and out of the escrow account as settlements are made and refunds determined. OHA will adhere to the Subpart V regulations which govern this process in order to give reasonable notice to the public of proposed refund procedures and to allow for the submission of applications for refund." 52 Fed. Reg. at 11739. In the initial "round" of refunds OHA paid successful claimants at $.0002 per gallon.

6. On April 11, 1989, OHA increased the cumulative volumetric amount to $.0008 per gallon and issued a round of supplemental crude oil refund checks to successful claimants who had been paid at the lower $.0002 rate. *Crude Oil Supplemental Refund Distribution*, 18 DOE ¶ 85,878 (1989).

7. On March 24, 1995, OHA announced that it would make another supplemental round of payments (at $.0008 per gallon) to prior successful crude oil refund claimants and that refund claims granted after March 3, 1995, would be granted at a new, increased volumetric amount of $.0016 per gallon. 60 Fed. Reg. 15562 (March 24, 1995).

8. On May 9, 2003, the Court issued a declaratory judgment that articulated DOE's obligation under existing departmental decisions to pay out refunds from the remaining crude oil funds collected by the DOE to individual refund claimants. *Consolidated Edison Co. v. Abraham*, 271 F. Supp. 2d 104 (D.D.C. 2003).

9.  Immediately following the May 9 Decision OHA commenced planning for the final stage of this proceeding. OHA published a Federal Register Notice on November 12, 2003, 68 Fed. Reg. 64098 (November 12, 2003). In this notice, OHA proposed to pay successful refund claimants a final supplemental refund at the rate of $ .00067 per gallon and outlined its proposed procedures for claimants to verify that the information on file for them was still correct. The Notice solicited comments from all interested parties.

10. After considering all of the comments received pursuant to the November 12 Federal Register Notice, OHA announced final procedures for the distribution of the remaining crude oil overcharge monies. 69 Fed. Reg. 29300 (May 21, 2004).

11. In the May 21, 2004 Federal Register Notice, OHA decided to make one single distribution of the crude oil funds to eligible claimants that would exhaust the crude oil funds and end the Department's role in supervising these funds. We rejected a proposal by Mr. Kalodner that would have required two disbursements, the second a ``closeout payment'' available only to his clients and other large claimants. We also rejected Mr. Kalodner's proposal that "DOE should deduct any [attorney's] fees awarded to him before disbursing any refunds to the claimants."

12. Immediately after our adoption of final procedures for the distribution of the remaining crude oil overcharge monies in the May 21, 2004 Federal Register notice, OHA began additional preparations to make the last distribution of crude oil monies.

13.     By the date of the deadline, December 30, 2004, OHA had received verification information from approximately 31,000 claimants. By the end of March 2005, OHA had entered all verification information into the database system.

14.     On January 26, 2005 the Court issued a decision in *Consolidated Edison v. Abraham*, Civil Action No. 03-1991, in which the Court award Mr. Kalodner attorney's fees in the "amount of thirty percent (30%) of the fund derived from the amount of the increase in the per million-gallon distribution over the $670 [per million gallons] initially proposed by DOE." *Consolidated Edison v. Abraham*, Civil Action No. 03-1991, *slip op.* at 12 (January 26, 2005).

15.     In an August 22, 2005 Federal Register Notice, OHA announced that the crude oil regulation enforcement monies collected from nine firms would be included in the crude oil funds set for distribution. 70 Fed. Reg. 48947 (August 22, 2005).

16.     On September 26, 2005, OHA issued a Federal Register Notice, 70 Fed. Reg. 57274 (September 30, 2005), proposing to issue partial refunds at the rate of $ .00068 per gallon, or approximately 90% of the money due each eligible claimant, while reserving 10% of the available funds, representing the amount of attorney's fees being sought by Mr. Kalodner in his appeal of the Court's January 26, 2005 decision. In this Notice, we acknowledged that an additional round of payments increased the burden on the Department, but concluded that the refund claimants deserved relief from the effects of the ongoing litigation. The Federal Register Notice provided for a 30 day comment period.

17. We received several comments in response to the September 30, 2005 Notice. In his comment, Mr. Kalodner, speaking on behalf of his clients, proposed that we exempt his clients from the 10% reserve. He provided a copy of a waiver of a claim for common fund fees against his clients. Two commenters objected to the reservation of 10% for attorney's fees. One commenter also strongly objected to the Kalodner proposal that we distribute to his clients all funds due and exempt them from the 10% reserve. The commenter states that "such differentiated payment cannot be justified legally or equitably" and that Kalodner "has no authority to decide which claimants pay and which do not for the alleged benefit confirmed on the entire group of claimants."

18. On January 6, 2006, OHA issued a Federal Register Notice announcing that we would issue refunds at the rate of $0.000695389 per gallon, or approximately 90% of the money due each eligible claimant, and reserve approximately 10% of the funds pending the resolution of outstanding litigation. 71 Fed. Reg. 2195 (January 13, 2006). We rejected Mr. Kalodner's proposal, stating that as "a matter of basic fairness, we intend to pay all claimants at the same volumetric rate." The reserved funds continue to be held in an interest-bearing escrow account.

19. As set forth above, each time the OHA has issued refunds in this proceeding over the past twenty years, those refunds have been paid to each of the eligible claimants at the same volumetric rate, initially at $0.0002 per gallon, with increases in the cumulative volumetric rate of $0.0006 per gallon in 1989, $0.0008 per gallon in 1995 and, most recently, $0.000695389 in

2006. Proceeding in this manner has proven to be both the fairest and most efficient method of refund distribution.

20.     The OHA has never computed a separate volumetric refund amount for a subset of the entire class of eligible claimants. It would be administratively burdensome and ultimately impracticable to compute a separate volumetric each time a small group of claimants cites special circumstances that it believes entitles it to an immediate refund payment, ahead of all other claimants. Further, it would be unfair to confer a special advantage on one group of claimants to the detriment of all other eligible claimants.

21.     We have concluded that there are scenarios under which it may be impracticable to distribute 100% of all remaining funds to eligible claimants. In the event that a court is to award Mr. Kalodner attorney's fees, paying a refund to his clients ahead of everyone else may result in Kalodner's client claimants potentially receiving proportionately more money that the remaining claimants. It is conceivable that the Kalodner client claimants could receive an individual refund while the other claimants would receive nothing due to impracticability of distribution of small funds. Given the fact that the money is earning interest, this potential inequity would be obviated by simply allowing OHA to proceed with the administratively established refund process.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information, and belief.

*[signature: Fred L. Brown]*

Fred L. Brown
Acting Director
Office of Hearings and Appeals
Department of Energy
HG-1/L'Enfant Plaza Bldg.
1000 Independence Ave., SW
Washington, DC 20585-1615

Date: FEB - 7 2007