IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CONSOLIDATED EDISON COMPANY OF NEW YORK, INC. et al | : |
| | : |
| Plaintiffs | : |
| | : Case Number 1:06CV01522RMC |
| V. | : |
| | : |
| SAMUEL BODMAN Secretary of Energy, United States et al | : |
| | : |
| Defendants | : |

PLAINTIFFS' STATEMENT OF POINTS AND AUTHORITIES

IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

AND

IN REPLY TO DEFENDANTS' OPPOSITION TO

PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

INTRODUCTION AND SUMMARY OF ARGUMENT

Defendants, the Secretary of Energy and the Director of the Department of Energy's Office of Hearings and Appeals ("DOE") have filed an opposition to Plaintiffs' Motion for Summary Judgment (and their own Motion for Summary Judgment) which admits the facts which are the basis on which plaintiffs seek an order of this Court directing the defendants to disburse to them and similarly situated clients of their attorney Philip P. Kalodner (cumulatively "Kalodner Client Group") 10% of the distribution

1

due them which was withheld by DOE for possible use to pay Kalodner a common fund fee should he be awarded such, together with interest earned thereon while the funds have remained in the U.S. Treasury.

Specifically, DOE acknowledges that (I) the 10% withheld in the distribution to all 31,000 claimants has been withheld solely for possible use to pay Kalodner a common fund fee for obtaining distribution of some $284 million of crude oil refunds to the claimants, and (ii) Kalodner has waived any claim to a common fund fee as against the plaintiffs and his other clients named in such waiver.

(Because he has fee agreements with such clients which specify his compensation, Kalodner believes it would be improper for him to seek an additional common fund fee, and has therefore waived any such common fund fee; as to the sole Kalodner client as to whom he has not waived a common fund fee, his fee agreement contemplates a common fund fee award)

Having acknowledged that the sole basis for withholding the 10% was its possible use to pay a common fund fee to Kalodner, and that it is in fact not required for such purpose by virtue of Kalodner's waiver of any such common fund fee as to the Kalodner Client Group, DOE argues that it cannot be required to distribute the 10% withheld from each member of the Kalodner Client Group because (I) even though Kalodner has waived a common fund fee as

2

to such of his clients and does not seek in litigation a common fund fee from such clients, a Court may nevertheless order assessment of a common fund fee for him against such clients, (ii) DOE has always made the same per gallon distributions to all claimants at the same time and should not be required to do differently now, (iii) there may be circumstances in which some part of the 10% withheld from the other claimants is used neither for a common fund fee or distributed to such claimants but is retained by the DOE, and in such a situation the other claimants will be treated less favorably than the Kalodner clients, and (iv) requiring payment of the withheld 10% to the Kalodner Client Group will significantly add to DOE's workload.

None of those arguments, nor DOE's obvious annoyance because it was unable to make a single distribution to all claimants by virtue of this Court's award of a common fund fee to Kalodner (and DOE's challenge to such award) justifies the continued withholding of funds for a purpose for which they cannot be used, i.e. payment of a common fund fee to Kalodner.

Finally, DOE's acknowledgment that but for the Kalodner fee claim it would distribute the 10% to claimants fully justifies the issuance of a writ of mandamus requiring such distribution to those claimants as to which there is no Kalodner fee claim.

For DOE to withhold such distribution in order to pressure Kalodner's clients to pressure Kalodner to abandon his claim for

a common fund fee, as DOE's Memorandum reveals it is doing, is an impropriety on the part of DOE which provides an additional reason why this Court should issue the requested writ of mandamus.

ARGUMENT

DOE cannot deny, and indeed it acknowledges, that it has withheld 10% of the distribution of crude oil refunds due to the members of the Kalodner Client Group solely on the basis that such funds may be needed to pay to Kalodner the 10% common fund fee he seeks. Nor can DOE deny, and indeed it acknowledges, that Kalodner has waived any claim for a common fund fee from the members of the Kalodner Client Group, having done so in a Waiver filed with DOE in October, 2005.

Faced with the fact that there is therefore no justification for withholding the 10% from the members of the Kalodner Client Group, DOE, first in announcing its decision to withhold the 10% from the Kalodner Client Group in its Federal Register Notice initiating a 90% distribution, 71 Fed. Reg. 2195 (January 13, 2006 ("January 13 Notice"), and now in responding to the instant Complaint, continues to cast about for some justification.

Four such arguments to justify withholding funds for a purpose for which they will not be needed seem discernible in the current DOE Memorandum. None of them have any merit:

I    DOE 'S ARGUES THAT A COURT MIGHT AWARD KALODNER A COMMON FUND FEE AGAINST THE FUNDS DUE HIS CLIENT GROUP MEMBERS; KALODNER DOES NOT SEEK SUCH, AND IF SUCH WERE AWARDED, HIS WAIVER WOULD PRECLUDE HIS COLLECTING SUCH

Of the four arguments DOE makes to justify withholding the 10% from the members of the Kalodner Client Group, only one is an argument that the 10% withheld from the Kalodner Client Group may be needed for the purpose for which it was withheld, i.e. to pay a common fund fee to Kalodner.

It is that a Court might award Kalodner a common fund fee as against all 31,000 claimants including the members of the Kalodner Client Group, and in such event, DOE will need the 10% withheld from the Kalodner Client Group members to satisfy such an award  As a basis for such argument, DOE notes that (I) when this Court awarded Kalodner a common fund fee in Consolidated Edison Co. v. Abraham, 03-1991 D.D.C. ("Con Ed V) it did not apparently exclude the funds due the Kalodner Client Group as a source of such a common fund fee, and (ii) in seeking a common fund fee initially in Consolidated Edison Co. v. Abraham , 01-0548 ("Con Ed IV"), and then in Con Ed V and in Consolidated Edison v. Bodman, 05-816 D.D.C. ("Con Ed VI"), Kalodner did not exclude as a source of such common fund fee the distribution due the Kalodner Client Group.

DOE argues that Kalodner's failure to exclude the funds due

5

the Kalodner Client Group in his application in <u>Con Ed VI</u> is particularly significant because that application was filed several months after the execution of the Waiver. The reason why Kalodner did not do so was because in that application he was asking this Court to reaffirm as part of the fee the award it had made in <u>Con Ed V</u>, an award which did not exclude the Kalodner Client Group and which was then on appeal.

DOE is incorrect in asserting that "until now" the Courts had not been advised that the funds due the members of the Kalodner Client Group were not to be tapped for a common fund fee. (DOE Memorandum, p. 5)

Long before the execution of a formal Waiver, Kalodner (I) had made it clear to this Court in a Complaint filed in January, 2005 in <u>Kalodner v. Abraham</u>, 05-0024 D.D.C. that he sought no common fund fee from his clients, and (ii) even earlier, in a Complaint filed in February ,2004 in <u>Kalodner v. Public Service Electric & Gas Co,</u>, 04-0152 D.D.C., Kalodner had advised this Court and Judge Kennedy to whom the matter was reassigned, that he sought no common fund fee from his clients, but only from the claimants other than his clients.

And finally, before the filing of the instant Complaint, Kalodner had advised this Court in a Complaint filed in <u>Kalodner v. Bodman</u>, 06-0818, and in a Motion to Consolidate that Complaint with the actions in 03-1991 and 04-0152 which had been remanded

6

by the Court of Appeals for the District of Columbia Circuit, that he was seeking a common fund fee as against the DOE only from the funds due those other than the members of the Kalodner Client Group, or in the alternative a common fund fee as directly against the claimants other than the members of the Kalodner Client Group.

There can be no doubt that in all of the pending litigation, the only litigation in which Kalodner can obtain a common fund fee, he does not seek such from the members of the Kalodner Client Group.

And if, despite Kalodner's eschewing an award from the funds due the members of the Kalodner Client Group, this Court or Judge Kennedy were to award Kalodner a common fund fee as against the members of the Kalodner Client Group, the Waiver filed by Kalodner with DOE and with this Court in the instant case would preclude Kalodner recovering such.

II    DOE'S ARGUES THAT IT HAS MADE ALL PRIOR DISTRIBUTIONS EQUALLY TO ALL CLAIMANTS AND THAT IT SHOULD NOT NOW BE REQUIRED TO TREAT THE KALODNER CLIENT GROUP AND THE OTHER CLAIMANTS DIFFERENTLY; THE ARGUMENT IS NEITHER TRUE, NOR RELEVANT

It is not true that in prior distributions, DOE has treated all claimants equally, as is suggested by OHA's Acting Director Fred Brown in his Declaration (paragraph 19), e.g.,

(I) In a settlement agreement denominated the <u>Citronelle Settlement Agreement</u>, approved by the District Court in <u>Amoco Oil Company et al v. DOE et al</u>, ("<u>Citronelle</u>"), C.A. H-94-2423 Dist. Ct. Southern District Texas (1995), DOE agreed to allocate to the then members of the Kalodner Client Group an additional portion of the crude oil funds it had recovered (and to allocate a similar amount to their attorney, Kalodner) in recognition of the service which had been rendered to all claimants by Kalodner and his clients who had obtained an increase in the funds available to the claimants generally. As a result, the members of the Kalodner Client Group have received a greater per gallon amount of the Citronelle refund than that received by the other claimants;

(ii) Although it is true that in the case of each distribution, including the one now being completed (i.e. of 90% of the available funds), a uniform amount per gallon has been distributed to all claimants, such has not provided the claimants equal treatment. On each occasion, some claimants have received distribution much later than others, without any interest for the delay. Thus, for example in the current distribution which began more than a year ago, some claimants have still not received the per gallon amount being distributed, and when they receive it, they will, in accordance with DOE policy, receive no interest for the delay.

In contrast, what the Kalodner Client Group here is seeking will avoid that very kind of inequality. The distribution of the withheld 10% to the members of the Kalodner Client Group will carry interest only to the date of such distribution, and any additional interest earned thereafter will accrue solely to the benefit of the remaining claimants. Thus, if DOE and the remaining claimants are successful in avoiding being charged any common fund fee, they will actually receive a greater amount per gallon than will the Kalodner Client Group, by obtaining interest to the date of the later distribution to them.

More importantly, however, than the inaccuracy of DOE's representation that it has always treated all claimants equally is the fact that even if true, it is irrelevant when the difference in treatment is not only justified, but is the very purpose of the doctrine whose application creates the difference.

The purpose of a common fund fee award is to compensate "a litigant or a lawyer who recovers a common fund (here the distribution of $284 million) for the benefit of persons other than himself or his client." Boeing Co. v. Van Gemert, 444 U.S. 472, 478 (1980).

Here, Kalodner, acting on behalf of his clients, pursuant to fee agreements which specify his compensation, has obtained a benefit, i.e. the distribution to all claimants, not only for his clients but for some 31,000 claimants who are not his clients.

"The rationale (for permitting an attorney in such a situation to claim a fee from those with whom he has no fee agreement) rests on unjust enrichment." <u>Knight v. U.S.</u>, 982 F. 2d 1573,1580 (Fed. Cir. 1993).

Kalodner's clients have already agreed to pay him for the benefit obtained, and cannot be properly charged an amount in addition to that to which they agreed. The other claimants are properly charged a common fund fee for the purpose for which the common fund fee doctrine exists, i.e. to avoid the unjust enrichment of such other claimants.

Thus, the difference in treatment of Kalodner's clients and the other claimants benefitted is necessary to accomplish the purpose of the common fund fee doctrine.


III   <u>DOE ARGUES THAT IF IT RETAINS A PORTION OF THE 10% WITHHELD FROM THE OTHER CLAIMANTS AFTER DISBURSING THE 10% DUE TO THE KALODNER CLIENT GROUP, THE KALODNER CLIENT GROUP WILL HAVE BEEN TREATED MORE FAVORABLY THAN THE REMAINING CLAIMANTS; SUCH A POTENTIAL REFUSAL TO DISCHARGE ITS DISTRIBUTION DUTY IS NO BASIS FOR REFUSING TO DISCHARGE ITS DUTY TO THE KALOdNER CLIENT GROUP</u>

Acting OHA Director Fred Brown suggests that if the entire 10% withheld for a potential common fund fee is distributed to the Kalodner Client Group members, and then so much of the 10% withheld from the other claimants is awarded to Kalodner as a

10

common fund fee as to make it "impracticable to distribute 100% of all remaining funds to eligible claimants", the Kalodner Group Claimants will have been treated more favorably than the other claimants (Fred Brown Declaration, par. 21).

The "scenario" which he presumably contemplates is one in which an award is made to Kalodner of practically the entire 10% withheld, e.g. 9.8 or 9.9%, and distribution of the remaining .1% or .2% would arguably be not be undertaken because of the "impracticability of distribution of small funds." id

It should be noted that in this rather unlikely "scenario" there would still be $284,000 available per .1% of the withheld $28,400,000, and claimants entitled to a significant portion of such funds would still be entitled to a significant amount so as to make distribution to them "practicable," e.g. if Kalodner was awarded a 9.9% fee and interest, and some $284,000 and interest remained, the Defense Logistics Agency of the United States would be entitled to some $35,000.

For at least three reasons, the DOE argument provides no basis for withholding the 10% from the Kalodner Client Group:

1. In the unexpected event that Kalodner is awarded almost, but not all of the 10% he seeks, it would be anticipated that, in accordance with DOE policy in the current distribution, as well as for practical reasons, DOE would distribute the entire remaining funds to the claimants, even if they were of less than

11

$300,000 in total

In the imagined "scenario", DOE would be faced with a choice of distributing to all claimants even though some might receive small amounts individually, or setting a minimum amount, e.g. $200, to which a claimant must be entitled for the claimant to receive distribution; moreover, if it chose the latter alternative, it would face the issue of whether the minimum would apply to individual claimants or only as to the total amount of the distribution order (single orders which have in the 90% distribution often included hundreds, indeed thousands of claimants).

To chose the latter alternative, i.e. fixing a minimum amount per claimant, or per order, would be contrary to DOE policy which has been to distribute the 90% amount to all claimants seeking it, with no minimum amount required.

Moreover, it would require more effort on the part of DOE than would distribution to all claimants without regard to the amount to which they are entitled.

In 102 Orders of DOE to date, DOE has made distribution to some 30,000 of the 31,000 claimants of their 90% share. The simplest way for DOE to make distribution of any remaining funds after any common fund fee award would clearly be for DOE to issue Orders covering the same claimants in each order, and substituting for the 90% award made the pro rata portion of the

remaining funds to which each claimant is entitled (by multiplying the per gallon or "volumetric" amount of such remaining distribution by the qualified volume of each claimant).

On the other hand, were DOE to set a minimum distribution amount per claimant, it would have to review and revise each of those 102 Orders to eliminate the included claimants entitled to less than the minimum amount set, e.g. $200.

It should not be assumed that DOE would select an option which both violates its policy and imposes an additional burden on DOE.

2. Because the 10% withheld for a common fund fee from the members of the Kalodner Client Group, approximately $4,670,000 (plus interest) will in any event be required to be disbursed to them, presumably in a single Order, a determination not to distribute to the other claimants because there are insufficient funds will not justify a refusal to distribute to the Kalodner Client Group.

Even if DOE would properly be able to withhold distribution to the other claimants because the amount remaining after payment of a common fund fee is insufficient to justify distribution, such would not justify a refusal to distribute the entire withheld 10% to the Kalodner Client Group.

DOE acknowledged in its January 13, 2006 Notice that if the withheld 10% is not used to satisfy the Kalodner demand, there

13

would be sufficient funds to warrant distribution.

Such is the case with regard to the Kalodner Client Group; they are by virtue of the Waiver, and will continue to be, entitled to the entire 10% withheld from each of them for a potential common fund fee to be paid Kalodner.

Moreover, the amount due them, some $4,670,000 before the addition of interest is clearly more than a sufficient amount o warrant distribution to them.

Such is particularly true because such distribution will, as has been the 90% distribution to them, be made to their attorney, Kalodner, pursuant to Powers of Attorney, and will be presumably made in one order.

Indeed, only one member of the Kalodner Client Group would receive less than $200 and only two less than $1000. Unless the DOE is prepared now to declare a minimum distribution per claimant in the distribution of what will remain from the withheld 10%, it has no "impracticability" basis for denying distribution of the withheld 10% to the members of the Kalodner Client Group as to whom any common fund fee claim has been waived; and unless DOE sets a minimum of less than $500 and applies it to the Kalodner Client Group, it has no arguable basis for withholding distribution of the 10% to the members of the Kalodner Client Group, save one claimant.

(In making the above analysis, one additional difficulty is

14

revealed in DOE setting a minimum distribution amount; because in a significant number of cases, a single claimant has filed multiple claims, in order to determine whether as to any claimant the minimum has been reached, an aggregation of all claims made by each claimant would have to be accomplished. Thus, there is yet another reason for DOE to make distribution of any and all available funds to the other claimants after the common fund fee litigation has been completed; only such would avoid the need to aggregate claims by each claimant.)

3. <u>Making distribution of the withheld 10% to the Kalodner Client Group now would leave $230,000 potentially due the Kalodner Client Group in the U.S. Treasury; such is sufficient to avoid different treatment of the Kalodner Client Group even if DOE later does refuses to refuse to distribute a small amount of remaining funds, or later sets a minimum distribution amount</u>

In addition to the 10% withheld for a possible Kalodner common fund fee, DOE withheld approximately $1,400,000 from the claimants so as to have sufficient funds to pay a claim by Mittal Steel USA ISG Inc. which it had denied but which had been appealed to the courts. (See January 13 Notice). Of that amount some $230,000 was withheld from the Kalodner Client Group.

The Kalodner Client Group has not here sued for distribution of that $230,000.

The District Court affirmed DOE's denial of the claim, and

15

the matter is currently before the Court of Appeals for the District of Columbia Circuit as of 06-5227, and is scheduled for argument March 15, 2007.

Unless the Court of Appeals reverses, DOE will have an additional $1,400,000 to distribute, together with interest earned thereon, and more importantly $230,000 of which (plus interest) will be funds due the Kalodner Client Group. By withholding the pro rata portion of such funds due any member of the Kalodner Client Group who would arguably not be entitled to a full distribution of the withheld 10% if a minimum for distribution is ultimately set, DOE will be able to achieve a treatment of the members of the Kalodner Client Group which is equivalent to that afforded the other claimants in the event that the amount remaining from the 10% withheld is less than an amount which it is practicable to distribute.

Even if the DOE refuses to distribute to any of the other claimants the remaining funds from the 10% withheld because the amount remaining after payment of a common fund fee to Kalodner is deemed too small, unless the amount remaining from the withheld 10% as to the other claimants is more than $1,170,000, even if DOE should determine not to distribute such remaining amount because of "impracticability", there would be sufficient funds due the Kalodner Client Group from the amount withheld to cover the Mittal Steel litigation for DOE to achieve equivalent

16

treatment of the Kalodner Client Group and the other claimants--
by withholding from the Kalodner Client Group a portion of the
$230,000 due them from the Mittal Steel withholding.


IV   DOE ARGUES THAT IT WOULD BE "ADMINISTRATIVELY BURDENSOME" TO
ISSUE AN ORDER DISTRIBUTING THE 10% WITHHELD TO THE KALODNER
CLIENT GROUP; SUCH AN ARGUMENT IS LUDICROUS AS IS THE SUGGESTION
THAT TO DO SO WOULD SOMEHOW OPEN THE GATES TO SIMILAR REQUESTS BY
OTHER "SMALL GROUP(S) OF CLAIMANTS"

      DOE's argument that it would be "administratively
burdensome" to issue a single one or two page order distributing
to Kalodner as attorney in a single wire transfer the 10%
withheld from the members of the Kalodner Client Group for
distribution by him to the members of the Group (Fred Brown
Declaration, par. 20) is clearly ludicrous.

      Indeed Brown himself so apparently recognizes, arguing that
the problem would be created not by the distribution of the
withheld common fund fee to the Kalodner Client Group, but rather
because such would create a precedent, i.e. that "(I)t would be
administratively burdensome and ultimately impracticable to
compute a separate volumetric each time a small group of
claimants cites special circumstances that it believes entitles
it to an immediate refund payment." id

      The simple answer is that this is the only case in which an

17

amount has been withheld from distribution solely for a single purpose, and as to which the claimant of the 10%, Kalodner, has waived any right to collect the 10% from his client members of the Kalodner Client Group.

To recognize such a Waiver and make distribution to the Kalodner Client Group would set no precedent for some group of claimants to assert the right to the withheld funds before the common fund fee litigation is concluded. Indeed there is no such group which could so claim until the common fund fee litigation is concluded.

No matter how many times DOE reiterates its argument that "it would be unfair to confer a special advantage on one group of claimants to the detriment of all other eligible claimants" (Fred Brown Declaration, par. 20), such argument has no merit where the inequality is in the very nature of the claim, as it is here where Kalodner is seeking compensation only from other claimants benefitted by litigation which he conducted on behalf of his clients.


V   DOE'S APPARENT REAL REASON FOR REFUSING TO DISTRIBUTE TO THE KALODNER CLIENT GROUP THE 10% WHICH IS DUE THEM AND FROM WHICH NO COMMON FUND FEE IS SOUGHT-- TO PRESSURE THE KALODNER CLIENT GROUP TO "REQUEST" THAT KALODNER ABANDON HIS EFFORT TO RECOVER A COMMON FUND FEE-- IS SUCH AN IMPROPRIETY AS TO FULLY JUSTIFY ISSUANCE OF

THE REQUESTED WRIT OF MANDAMUS REQUIRING THE DISTRIBUTION

    In its Memorandum, DOE reveals both its annoyance with
Kalodner's application for a common fund fee which, in its view,
prevented the single final distribution which it had planned to
make (at p. 2, 4-5), and the real reason for refusing to
distribute the withheld 10% to the Kalodner Client Group-- i.e. a
desire to pressure the Kalodner Client Group to "approach their
attorney with a request that he cease his quest for attorneys
fees against DOE and allow DOE to make a final distribution to
all claimants using the same formula for each of them." (DOE
Memorandum, p. 5-6).

    The annoyance with Kalodner for DOE's inability to make a
single distribution because of the pendency of Kalodner's common
fund fee claim is both ill-founded, and made with ill grace.

    It is ill-founded because a single distribution was rendered
impossible not by Kalodner's application for a common fund fee,
but by the award of such a common fund fee in part by this Court
in Con Ed V. The pendency of that award, more than $11 million,
approximately 4% of the amount available for distribution,
precluded a single distribution. In view of that fact, DOE
elected to reserve the entire 10% sought as a common fund fee.

    (Kalodner never intended to charge his clients with a common
fund fee, and had he received either this Court's awarded fee or
the larger fee he sought from the funds due all claimants, he

19

would have refunded to his clients the amounts charged to them).

The DOE's annoyance with Kalodner because the pendency of his fee claim-- and more importantly this Court's fee award-- precluded a single distribution comes with ill grace because the DOE had it within its power to resolve the matter by paying Kalodner the fee awarded by this Court, in exchange for which Kalodner had offered to abandon his effort to recover a larger fee. Had DOE done so, it could have accomplished a single distribution, and indeed done so at an earlier date that it began the 90% distribution.

As to the real reason revealed in DOE's Memorandum for DOE's refusal to distribute the withheld 10% to the Kalodner Client Group-- that by doing so the DOE seeks to pressure the Kalodner Client Group to pressure Kalodner to abandon his effort to recover a common fund fee-- such is indeed the kind of "impropriety" which although not required to justify issuance of a writ of mandamus to compel "unreasonably delayed agency action" In re Am. Rivers & Idaho Rivers United, 372 F. 3d 413 (D.C. Cir. 2004), TRAC v. FCC, 750 F. 2d 70 (D.C. Cir. 1984), certainly justifies such.

Moreover, this is not merely a case where the administrative agency is delaying a decision and where mandamus is being sought to require the agency to make a decision. As is clear from the DOE Memorandum, DOE has made a decision-- to withhold 10% from

the Kalodner Client Group until the conclusion of litigation which does not affect their right to the 10%, i.e. Kalodner's application for a common fund fee from the 10% being withheld from the <u>other</u> claimants.

Under such circumstances there is no legitimate concern that issuance of mandamus is in some way interfering with the exercise of a deliberative process by the administrative agency.

Certainly all three requirements for the issuance of mandamus, as set forth in <u>Northern States Power Co. V. DOE</u>, 128 F. 3d 754, 758 (D.C. Cir. 1997) are here satisfied: (I) "the defendant has a clear duty to act", i.e. to distribute the available funds-- so this Court held in <u>Con Ed IV</u> "to the extent practicable", and so the DOE acknowledged as "practicable" in its January 13 Notice, and indeed again in the instant Memorandum, at least where claimants are entitled to the entire withheld 10%, as is the case with the Kalodner Client Group, (ii) "the plaintiff has a clear right to relief", i.e. to receive the 10% withheld for a common fund fee which is not in fact sought from the funds due the Kalodner Client Group, and indeed has been specifically waived as to the members of that Group by Kalodner, and (iii) "there is no other adequate remedy available to the plaintiff"-- the rate of interest being earned on the withheld funds is far below the internal rate of return available to the claimants, and certainly far lower than the cost to the millions of customers of

the plaintiff Utilities to whom the 10% will be passed through of paying a higher utility bill than one which would reflect the receipt of the 10% withheld.

## CONCLUSION

For the reasons set forth above, and in Plaintiffs' Statement of Points and Authorities In Support of Plaintiffs' Motion for Summary Judgment, this Court should enter an Order (I) granting Plaintiffs" Motion for Summary Judgment and directing the defendants, officials of the U.S. Department of Energy  to distribute forthwith to the plaintiffs and the members of the Kalodner Client Group the 10% withheld from them for possible payment of a common fund fee to Kalodner, an amount of $.000077561 per qualified gallon, together with the interest earned thereon in the U.S. Treasury from and after December 28, 2005 and until the date of distribution of such $.000077561 per gallon, and (ii) denying Defendants' Motion for Summary Judgment.

Plaintiffs respectfully request the opportunity to offer oral argument in support of their Motion for Summary Judgment, and in opposition of Defendants' Motion for Summary Judgment.

Respectfully submitted,

_____

Philip P. Kalodner
208 Righters Mill Rd.
Gladwyne PA 19035
DC Bar 973578
610-649-8749

Attorney for Plaintiffs
and the Kalodner Client Group

February 20, 2007