UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CONSOLIDATED EDISON CO., et. al. | ) |
| | ) |
|       **Plaintiffs,** | ) |
| | ) Case no. 1:06-cv-01522-RMC |
| v. | ) |
| | ) |
| | ) |
| SAMUEL BODMAN, et. al. | ) |
| | ) |
|       **Defendants.** | ) |

**DEFENDANTS' REPLY TO PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

By virtue of cross-motions for summary judgment, the Court is being asked to enter a judgment in favor of either the Plaintiffs or the Defendants. The facts relied upon by the Defendants are not in dispute, and, as a matter of law, judgment should be entered in favor of the government.

The Plaintiffs argue in their combined response and reply, filed herein on February 21, 2007, that: (1) there is no reason to believe that if the Court awards a common fund fee, it would be a percentage of refunds due to all claimants, including the Plaintiffs; (2) that although it is true that the DOE Office of Hearings and Appeals (OHA) has always made distributions applying the same per gallon formula, that has not resulted in a true equality among claimants and equal treatment, in Plaintiffs' view, is unnecessary; (3) that Plaintiffs simply do not agree with the sworn statement of OHA's acting director as to the potential scenarios under which paying Plaintiffs ahead of everyone else may result in Plaintiffs receiving proportionately more money than other claimants; (4) that it is not administratively burdensome to issue a single payment to Plaintiffs; and (5) that Defendants' real reason for refusing to make a separate distribution to Plaintiffs is to force them to pressure their attorney to drop his claim for fees.

It should be noted that Plaintiffs do not dispute in any way the legal grounds and authorities set forth in Defendants' memorandum with respect to the law of mandamus, the law on delayed

1

agency action under § 701(1) of the Administrative Procedure Act (APA), and the standard of judicial review for OHA decisions as set forth in *Phoenix Petroleum Co. v. FERC*, 56 F.3d 1555 (Fed. Cir. 1995). It is clear that Plaintiffs do not meet their high burden of proof for the requested remedy of mandamus. The agency is delaying payment to all claimants after a careful review and consideration of all factors and possibilities. The Court should decline the Plaintiffs' invitation to step in and micromanage the distribution of refunds on an individual basis at the whim of one group of claimants.

Defendants would like to briefly address each of the five major arguments in Plaintiffs' memorandum.

### 1. Defendants are justifiably cautious when it comes to predicting how a judgment for common fund fee and appeal would come down.

This Court awarded a common fund fee in *ConEd V* (D.D.C. case no. 03-1991, January 26, 2005 order), which was later reversed by the D.C. Circuit Court in *Consolidated Edison v. Bodman*, 445 F.3d 438 (D.C. Cir. 2006). Also, in *ConEd V*, the trial court denied Plaintiffs' common fund fee request for their attorney's efforts in *ConEd IV*. That was also reversed due to Defendants' failure to argue issue preclusion on appeal. 445 F.3d at 450. The case was remanded back for the trial court to consider whether an award to the Plaintiffs (not to their attorney[1]) is due, or whether the issue is precluded from relitigation. *Id.* at 442. In any event, in *ConEd V* and its appeal, neither the trial court, nor the D.C. Circuit excluded Plaintiffs' share of the refunds from the award for attorney fees. It is perfectly reasonable for OHA to anticipate the possibility that a money judgment could come down the same way and to base its administrative decision for overall distribution of claims on such

---

[1] Kalodner has been arguing that the D.C. Circuit made a mistake in treating the money judgment for common fee in *ConEd V* as one belonging to the Plaintiffs, his clients. He maintained in the appeal of *ConEd V*, and continued to maintain in a subsequently filed lawsuit by him, *Kalodner v. Bodman*, D.D.C case no. 06-818, that the claim for fees was his, not his clients'. However, the D.C. Circuit has made it clear that only his clients potentially have a claim for common fund fee. 445 F.3d at 442.

a possibility. As Plaintiffs themselves state in their memorandum on page 5, the waiver would preclude collection by Kalodner of any excess fees. It is an issue between Kalodner and his clients, and it would be resolved by a proper waiver. Because of the past litigation experience, OHA is justified in delaying the distribution of any portion of the 10% it has reserved for payment of attorney fees, and under § 701(1) of the APA and the six factors[2] the courts apply, the delay is a reasonable one.

### 2. OHA has always used the same volumetric rate for all claimants.

Plaintiffs admit that OHA has always used the same formula for refunds (Pl.'s mem. pg. 8). They then state that despite this practice, there have been certain inequalities in the past, such as the Plaintiffs actually receiving a greater per gallon amount than other claimants, or some claimants actually receiving distribution later. The latter contention is not supported by any evidence of record in this lawsuit and Defendants are not required to address it. It may be that Plaintiffs have in the past received payments as part of a settlement (the "Citronelle" settlement) resulting in a larger overall per gallon payment, but that does not entitle them to another settlement, or another separate treatment when they so desire. Plaintiffs then point that they should indeed be treated differently, because the fee should not be assessed as against them. Assuming that this is so, the issue right now is a timing issue – should the agency make predictions on the outcome of the separate lawsuits filed by the Plaintiffs and by their attorney and make partial distribution at possibly a different rate, or wait until a court makes a ruling on the common fund fee claims and then make final distribution? Waiting for a judicial resolution on the entitlement of a fee, while maintaining the fund in an interest bearing account, is the prudent course.

---

[2] The courts consider certain factors set out in *TRAC v. FCC*, 750 F.2d 70 (D.C. Cir. 1984): 1) the "rule of reason" time for an agency to make a decision; 2) any statutory timetable, (3) human health and welfare at stake, (4) effect of expedited action on higher or competing priority for the agency, (5) interest prejudiced by the delay, and (6) a finding of no impropriety behind the delay.

      **3.**     **Plaintiffs should not be allowed to dictate to the agency how to distribute funds to other claimants.**

On pages 10-17, Plaintiffs engage in what under the law even a Court should not be doing – making decisions on when and how to pay other claimants and essentially exercising the agency's administrative authority. Plaintiffs express their disagreement with OHA's acting director's declaration ("Declaration," attached to Pl.'s Mot. for Summ. J.) that the agency has concluded that there are scenarios under which it may be impracticable to distribute 100% of the remaining funds and that there is the potential for Plaintiffs receiving proportionately more money that the rest of the claimants. (Declaration, ¶ 21,). It is preposterous for Plaintiffs to usurp the role of the agency and to dictate an agency course of business in making refund payments to other claimants, just so that Plaintiffs can be paid in advance of everyone else. They even bring into their argument a lawsuit by another Kalodner client – *Mittal Steel v. Bodman*, 435 F. Supp. 2d 106 (D.C. Cir. 2006) – to suggest how OHA could use the money it had reserved for possible payment to Mittal Steel should the D.C. Circuit affirm the dismissal of the case. They hypothesize how those amounts would be sufficient to balance the potential inequity in the event small amounts for payment to the rest of the claimants render them impracticable to distribute. There certainly is no evidence to support Plaintiffs' speculation that the *Mittal* money will be sufficient to balance the books. Rather than indulging Plaintiffs' speculation concerning the future of *Mittal* and the other cases initiated by Plaintiffs or their counsel, the better course is simply to allow the lawsuits to proceed to final judgment so that OHA can make a single, final distribution to all claimants.

      **4.**     **Plaintiffs incorrectly interpreted Fred Brown's declaration.**

Fred Brown's declaration speaks to the decision to delay payment to Plaintiffs and all other claimants until all lawsuits are resolved. OHA does not claim that it would be administratively burdensome to issue a payment to Plaintiffs, as Plaintiffs seem to suggest on page 17 of their brief.

The burden would be if OHA adopts the practice to accommodate separate groups, instead of issuing refunds to all and at the same rate and the same time. While Plaintiffs may be the only group making such a request, OHA made the decision back in January of 2006 to not single them out for advance payment after its September 30, 2005 notice and comments by claimants. (Declaration, ¶ 17.) One commenter specifically objected to Kalodner's proposal for OHA to pay his clients ahead of all others arguing that such action is "not on sound legal or equitable grounds." (*Id.*) OHA took all comments into account and determined that in some cases, a premature payment may result in inequitable treatment (Declaration, ¶ 21.)

**5.    The Plaintiffs have no grounds or evidence to claim that the Defendants have acted improperly in refusing to make premature distributions**

Plaintiffs try to make a case for "impropriety," possibly in an attempt to satisfy at least one of the six factors courts are looking at under § 701(1) of the APA. They assert that the Defendants' only reason to refuse making a distribution to the Plaintiffs is to force them to pressure their attorney, Kalodner, to abandon his efforts to collect a common fund fee. They have absolutely no factual evidence to support such an accusation. The reality is that OHA refused to adopt Kalodner's proposed distribution in his comment to the September 20, 2005 notice while at the same time setting aside 10% for a fee. (Declaration, ¶¶ 17 and 18). Not only does that decision fail to suggest any impropriety on the part of OHA, but it in fact speaks to the great care with which the agency is handling the barrage of lawsuits that Kalodner and his clients file time after time. OHA acted exactly as it should have – taking into account the money judgment that was assessed as against all claimants, including Plaintiffs, as well as all comments responding to its notice, and made a reasonable decision to set aside the maximum amount of money that Plaintiffs have sought in the court case. Had Plaintiffs been successful on appeal in *ConEd V*, they would have been paid an amount which would have included money assessed against them as well. It would have been up to

5

them and their attorney to decide whether the waiver requires Kalodner to not collect some portion of the judgment. Defendants believe that this is an issue between Kalodner and his clients – if an award is assessed against the Plaintiffs, their attorney will presumably not collect more than what his contract for services spells out. In addition, the Plaintiffs and their attorney are in the best position to plan litigation strategy in such a manner so as not to impede each other's claims. This may not have been done in this case, but that is hardly OHA's fault.

## CONCLUSION

In conclusion, Plaintiffs have failed to meet the heavy burden required for a mandamus. The lawsuits and claims for fees made in both Plaintiffs' and their attorney's lawsuits have created an uncertainty as to how a fee should be assessed, if at all, and who the claimant is. The agency has responded to the complicated litigation issues in a responsible manner – by soliciting comments from claimants and taking into account various scenarios. Its decision to treat all claimants fairly and equitably and to await final resolution of all lawsuits concerning fees is a reasonable decision, which should be afforded deference in a judicial review, especially since all funds are in an interest bearing account. Plaintiffs are going to receive their share of the 10% reserve at the same time as all other claimants receive their share. This is a timing issue, not an entitlement issue, and this Court should defer to the agency in making the right decision.

Dated: March 5, 2007

                                              Respectfully submitted:

                                              _____/s/_____
                                              Ada L. Mitrani, D.C. Bar # 498560
                                              Stephen C. Skubel, D.C. Bar # 256461
                                              U.S. DEPARTMENT OF ENERGY
                                              GC-31 FORS
                                              1000 Independence Ave. SW
                                              Washington D.C. 20585
                                              Tel. 202-586-5550
                                              Fax 202-586-3437